FILED
GREAT FALLS DIV.

'06 OCT 25 PM 1 42

PATRICK E. LUFFY, CLERK

BY _____

DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

HELENA DIVISION

JENNIE K. EKWORTZEL,

Plaintiff,

vs.

JO ANNE B. BARNHART,
Commissioner of Social
Security,

Defendant.

CV-06-15-H-CSO

**ORDER AFFIRMING
COMMISSIONER'S DECISION
AND GRANTING COMMISSIONER'S
MOTION FOR SUMMARY JUDGMENT**

Plaintiff Jennie K. Ekwortzel ("Ekwortzel") initiated this

action to obtain judicial review of the decision of Defendant,

Commissioner of Social Security ("Commissioner"), denying her

applications for disability insurance benefits ("DIB") and

supplemental security income ("SSI") under Titles II and XVI of

the Social Security Act ("the Act"), 42 U.S.C. §§ 401-33, 1381-

1383c, respectively.

On August 23, 2006, upon written consent of the parties,

this case was assigned to the undersigned for all purposes

(*Court's Doc. No. 14*).  Now pending before the Court is

Ekwortzel's Motion for Summary Judgment (*Court's Doc. No. 9*) and

-1-

Commissioner's Motion for Summary Judgment (*Court's Doc. No. 15*).
Having considered the issues presented by the parties, together
with the administrative record, the Court hereby affirms the
Commissioner's decision, and grants the Commissioner's Motion for
Summary Judgment (*Court's Doc. No. 15*).

## I.    PROCEDURAL BACKGROUND

Ekwortzel filed her applications for DIB and SSI on May 18,
2004, alleging a disability onset date of May 15, 2000.[1]  *Tr.* at
56-58; 252-54.  Ekwortzel's applications were denied initially
and upon reconsideration.  *Tr.* at 36-38; 41-42; 257-59.  After a
hearing held on October 26, 2005, (*Tr.* at 261-314),
Administrative Law Judge ("ALJ") Michael A. Kilroy ("Kilroy")
found, in a decision dated November 16, 2005, that Ekwortzel was
not disabled within the meaning of the Act.  *Tr.* at 18-26.

The Appeals Council declined to review the ALJ's
determination, (*Tr.* at 6-8), making the Commissioner's
determination the final decision for purposes of judicial review.
20 C.F.R. § 416.1481.  Jurisdiction vests with this Court
pursuant to 42 U.S.C. § 405(g).

## II.   STANDARD OF REVIEW

This Court's review is limited.  The Court may set aside the
Commissioner's decision only where the decision is not supported

---

[1] Ekwortzel's alleged onset date was amended at her October 26,
2005, hearing to May 20, 2002.  *Tr.* at 266-67.

by substantial evidence or where the decision is based on legal error. Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995). Substantial evidence also has been described as "more than a mere scintilla" but "less than a preponderance." Sandegathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997). The District Court must consider the record as a whole, weighing the evidence that both supports and detracts from the Commissioner's conclusion. Green v. Heckler, 803 F.2d 528, 530 (9th Cir. 1986) (citing Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985)). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954 (citation omitted).

## III. **BURDEN OF PROOF**

A claimant is disabled for purposes of the Act if: (1) the claimant has a "medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than twelve months," and (2) the impairment or impairments are of such severity that, considering the claimant's

-3-

age, education, and work experience, the claimant is not only unable to perform previous work, but the claimant cannot "engage in any other kind of substantial gainful work which exists in the national economy." Schneider v. Commr. of S.S.A., 223 F.3d 968, 974 (9th Cir. 2000) (citing 42 U.S.C. § 1382(c)(a)(3)(A)-(B)).

Claimants bear the burden of proving disability. Bellamy v. Sec. of H.H.S., 755 F.2d 1380, 1381 (9th Cir. 1985) (citation omitted). In determining whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process. Corrao v. Shalala, 20 F.3d 943, 946 (9th Cir. 1994) (citing 42 U.S.C. § 1382(a)(3)). The process is as follows:

1.  The claimant must first show that he or she is not currently engaged in substantial gainful activity. Id.

2.  If not so engaged, the claimant must next show that he or she has a severe impairment. Id.

3.  The claimant is conclusively presumed disabled if his or her impairments are equivalent to one on the list of impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity.

4.  If the claimant does not have a listed impairment, then the claimant must establish a prima facie case of disability by showing an inability to engage in past work because of the medical impairments. Id.

5.  Upon such a showing, the burden then shifts to the Commissioner to prove that plaintiff can engage in other types of substantial gainful work existing in the national economy given the claimant's age, education, work

-4-

> experience and residual functional capacity
> ("RFC"). Jones, 760 F.2d at 995.

If the Commissioner finds that a claimant is disabled or not disabled at any point in this process, the review process is terminated. Corrao, 20 F.3d at 946.

## IV. DISCUSSION

From a review of the evidence in the record, and the testimony presented at the hearings on Ekwortzel's claim, the ALJ, following the five-step sequential evaluation process, first found that Ekwortzel has not engaged in substantial gainful activity since her alleged onset date of May 20, 2002. *Tr.* at 19; 25 (*Finding No. 2*). Second, the ALJ found that the medical evidence establishes that Ekwortzel has "severe" medically determinable impairments of COPD and depression. *Tr.* at 19; 25 (*Finding No. 3*).[2] Third, the ALJ found that these impairments did not, either alone or in combination, "meet or medically equal" one of the impairments described in the Listing of Impairments found in Appendix 1, Subpart P, Regulation No. 4. *Tr.* at 19; 25 (*Finding No. 4*).

The ALJ next found that Ekwortzel's allegations were partially credible. *Tr.* at 23; 25 (*Finding No. 5*). Considering

---

[2] The ALJ also found that her back problems, carpal tunnel syndrome, right foot degenerative joint disease, psoriasis, and hearing condition were not severe impairments. *Tr.* at 19-20.

Ekwortzel's RFC,[3] the ALJ found that she is unable to perform her past relevant work. *Tr.* at 24-25 (*Finding No. 7*). The ALJ found that Ekwortzel does have transferable skills to perform work within her RFC. *Tr.* at 24-25 (*Finding No. 10*). Finally, within the framework of Vocational Rule 202.07, relying on the testimony of James Fortune, a vocational expert ("VE"), Ekwortzel's age, educational background, work experience, and RFC, the ALJ found that Ekwortzel could perform a significant number of jobs in the national economy. *Tr.* at 24-26 (*Finding No. 12*). Accordingly, the ALJ found that Ekwortzel was not disabled, as defined in the Act. *Tr.* at 24; 26 (*Finding No. 13*).

In seeking reversal or remand of the Commissioner's decision, Ekwortzel makes four arguments. First, she contends that the ALJ erred in finding that her medical conditions did not meet or equal an impairment found in listings § 3.02 and § 12.04. *Plf.'s Brief in Support of Mot. for S.J.* (hereafter "*Plf.'s*

---

[3] The ALJ found that Ekwortzel has the RFC "to perform light work that allows for lifting and carrying of 10 pounds frequently and 20 pounds on occasion. [Ekwortzel] can sit for 40-60 minutes at a time, stand for 45 minutes, and walk for 30 minutes, given the opportunity to alternate positions as needed. She can frequently balance, but she can only occasionally stoop, crouch, and climb stairs. [Ekwortzel] can seldom kneel, and she can seldom, if at all, crawl or climb ladders. She can perform fine and gross motor functions frequently, but not on a repetitive basis. Due to her breathing difficulties, [Ekwortzel] should avoid environmental irritants and constant exertion. Her hearing loss precludes environments with high background noise. As indicated by the medical expert, [Ekwortzel] is capable of performing tasks involving a minimal level of complexity with one to two steps. She should avoid jobs involving constant stress, production quotas, and a constant demand for decision making and judgment." *Tr.* at 23-25 (*Finding No. 6*).

-6-

Brief") at 6-13. Second, she asserts that the ALJ erred in disregarding the opinion of Dr. Driscoll, her treating psychiatrist. Id. at 13-17. Third, Ekwortzel argues that the hypothetical question the ALJ presented to the VE was not supported by the record and did not reflect her limitations. Id. at 18-19. Finally, she asserts that the ALJ erred when he found Ekwortzel to only be partially credible. Id. at 19-20.

In response, the Commissioner argues that the ALJ's decision is supported by substantial evidence and free of legal error. Def.'s Ans. Brief (hereafter "Def.'s Brief") at 2. The Commissioner asserts that there is substantial evidence in the record to support the ALJ's conclusion that Ekwortzel did not meet all of the requirements of listings § 3.02 or § 12.04. Id. at 3-6. She contends that the ALJ gave specific and legitimate reasons for rejecting Dr. Driscoll's opinion. Id. at 6-9. The Commissioner argues that the ALJ properly found that Ekwortzel's subjective complaints were only partially credible. Id. at 10-12. Finally, she asserts that the ALJ's decision that Ekwortzel was not disabled is supported by the VE testimony. Id. at 12-13.

For the reasons set forth below, the Court finds that substantial evidence does exist in the record to support the ALJ's decision. Accordingly, this Court affirms the Commissioner's decision that Ekwortzel is not disabled.

## A.   EKWORTZEL'S CREDIBILITY

-7-

Ekwortzel argues that the ALJ erred in finding that she is only partially credible. See *Plf.'s Brief* at 19-20; *Plf.'s Reply Brief* at 11-15.[4] She contends that "this finding is clearly without basis in either the medical records or the evidence before the ALJ." *Plf.'s Brief* at 20. Ekwortzel asserts that the ALJ "simply chose to arbitrarily discredit" her testimony and ignore the objective findings of her COPD. Id. The Court does not agree.

When considering a claimant's subjective symptom testimony, an ALJ must perform a two-stage analysis: (1) the Cotton test; and (2) an analysis of the claimant's credibility as to the severity of the symptoms. Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996) (referring to Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)). The Cotton test requires only that the claimant (1) produce objective medical evidence of an impairment; and (2) show that the impairment(s) could reasonably be expected to produce some degree of symptom. Smolen, 80 F.3d at 1281-82 (citing Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) and Cotton, 799 F.2d at 1407-08); 20 C.F.R. § 404.1529(a) and (b).

---

[4] The Court notes that Ekwortzel's reply brief (*Court's Doc. No. 18*) is sixteen pages in length. Local Rule 7.1(f) provides that "[r]eply briefs may not exceed ten (10) pages unless the filing party has obtained prior leave of Court. If filed without leave, such briefs will not be considered by the Court." Ekwortzel did not seek leave of Court to file an overlength brief. Defendant did not object. Accordingly, the Court will consider all of Ekwortzel's reply brief. The Court, however, expects the parties to be familiar and comply with the local rules.

If the Cotton test is satisfied, and there is no evidence of malingering, then the ALJ can reject subjective testimony of the severity of the symptoms only by citing specific, clear and convincing reasons for doing so. Smolen, at 1283-84 (citing Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993)). To assess a claimant's credibility, the ALJ may consider ordinary credibility evaluation techniques, unexplained or inadequately explained failure to seek or follow treatment, and the claimant's daily activities. Id. at 1284; Fair v. Bowen, 885 F.2d 597, 603-604 (9th Cir. 1989). However, "[g]eneral findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaint." Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) (quoting Lester, 81 F.3d at 834). The ALJ must also consider the factors set forth in SSR 88-13 including:

> A. The nature, location, onset, duration, frequency, radiation, and intensity of any pain;
>
> B. Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);
>
> C. Type, dosage, effectiveness, and adverse side-effects of any pain medication;
>
> D. Treatment, other than medication, for relief of pain;
>
> E. Functional restrictions; and
>
> F. The claimant's daily activities.

SSR 88-13, *superseded in part on other grounds*, 95-5P; see also 20 C.F.R. § 404.1529(c)(3).

Here, the ALJ found objective medical evidence in the record to support some of Ekwortzel's limitations. He also found that Ekwortzel's impairments reasonably could be expected to produce some degree of symptom. Moreover, the ALJ did not find that Ekwortzel was malingering. Thus, to reject her subjective testimony about the severity of her symptoms, the ALJ had to cite specific, clear and convincing reasons. Smolen, 80 F.3d at 1283-84. The Court finds that he did.

First, the ALJ argues that "the medical evidence does not support a disabling condition, and [Ekwortzel's] impairments are not as significant as she contends." *Tr.* at 23. He indicates that although Ekwortzel claims an alleged onset date of May 2002, there is no evidence of any "significant" medical care until April 2003. *Tr.* at 23.

The ALJ also cites Ekwortzel's failure to follow "reasonable medical recommendations" as a reason for not finding her fully credible. *Tr.* at 23. The ALJ indicates that at the time of her April 2003 motor vehicle accident, she was instructed to use anti-inflammatories and exercise to treat muscle strain. *Tr.* at 23; 164; 169. When alleging ongoing discomfort, however, she admitted that she had not been exercising and she had not been using anti-inflammatories. *Tr.* at 23; 164. The Court finds this

-10-

to be a specific, clear and convincing reason.  See 20 C.F.R. §

404.1530(b); 20 C.F.R. § 416.930(b) (holding that refusal to

follow prescribed medical treatment without good reason will

preclude a finding of disability).

Ekwortzel argues that the ALJ cites examples relating to

treatment for conditions other than her COPD and depression.  She

contends that "[t]reatment for these medical conditions relates

in no manner to the disabling conditions cause by COPD and

depression and therefore are not relevant as to [her] credibility

and should be ignored by the Court."  Plf.'s Reply Brief at 12.

The Court does not agree.  Ekwortzel alleged disability due to

the following impairments: COPD, depression, back condition,

carpal tunnel syndrome, degenerative joint disease of the right

foot, pustules psoriasis, and hearing.  Tr. at 272-79.  Although

the ALJ only found a few of these impairments to be severe, he

may consider her testimony regarding all impairments when

determining credibility.  See Brown v. Callahan, 120 F.3d 1133,

1135 (10th Cir. 1997)(all testimony may be considered in

determining credibility issues).

In addition, the ALJ further noted that although Ekwortzel

has severe breathing problems, the medical evidence indicates

that her COPD was "reportedly stable in March 2005."  He

determined that "[i]t is reasonable to conclude that [her]

pulmonary condition is tolerable since she has not followed the

-11-

advice of her doctors to stop smoking." *Tr.* at 23.

Finally, with regard to her depression, the ALJ makes two observations. First, he notes that she was initially treated for situational depression in 2001, and then notes that there is no further mention of such symptoms in the medical records until April 2003. *Tr.* at 23; 126-46; 164. Second, the ALJ noted that Ekwortzel "indicated that she has not been compliant with the use of anti-depressants, and according to mental health records in September 2005, [her] symptoms improved with the use of medications." *Tr.* at 23. Ekwortzel argues that her failure to use medication is due to her inability to afford the medication. Accordingly, she argues that the ALJ should not rely on this fact as evidence of her credibility.

As stated above, the regulations provide that refusal to follow prescribed medical treatment without good reason will preclude a finding of disability. See 20 C.F.R. § 404.1530(b); 20 C.F.R. § 416.930(b). But a finding of disability cannot be precluded when the claimant's failure to obtain treatment was due to lack of sufficient financial resources. See Warre v. Commr. of S.S.A., 439 F.3d 1001, 1008 (9th Cir. 2006) (citations omitted). The record is clear that at times Ekwortzel was not following her prescribed treatment. She alleges that the reason for this lack of compliance is because of limited finances. The record, however, indicates that she was receiving help with

-12-

enrolling in the "MAP" program and was also given significant amounts of samples. See e.g., Tr. at 164. Further, the ALJ's determination regarding Ekwortzel's credibility is not inextricably tied to his finding of noncompliance. His finding of noncompliance was but one reason for finding Ekwortzel only partially credible.[5] Accordingly, the Court does not find Ekwortzel's argument regarding this issue to be persuasive.

As already noted, the Court's function is not to reweigh the evidence. If more than one rational interpretation of the evidence is possible, one of which supports the ALJ's decision, the Court must uphold the ALJ's conclusion. Thomas, 278 F.3d at 954 (citation omitted). Based upon careful consideration of the entire record, the Court concludes that the ALJ properly considered Ekwortzel's allegations of pain and other symptoms, and provided specific, clear and convincing reasons for his conclusion with respect to Ekwortzel's credibility, based on the required factors.

## B.  DR. DRISCOLL'S OPINION

Ekwortzel argues that the ALJ did not set forth specific and legitimate reasons for "completely" ignoring the opinion of her

---

[5]The ALJ noted that Elwortzel's daily activities include "performance of minor household chores, shopping, transporting her niece to and from school, caring for animals, attending church, visiting and reading." Tr. At 23. He also noted that in 2004 Dr. Hurd observed "no pain behavior upon evaluation and x-rays revealed no significant abnormalities." Id.

-13-

treating psychiatrist, Dr. Evelyn Driscoll. *Plf.'s Brief* at 13. She contends that Dr. Driscoll's opinions are based upon substantial medical evidence and are uncontested. Id. at 15. Ekwortzel asserts that the treatment notes of C.J. Harrington, LCSW ("Harrington") are "clearly consistent with the findings by Dr. Driscoll and the medical assessment was supported by [Harrington's] own findings contained in the medical questionnaire." Id. at 16.

"As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant. At least where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for 'clear and convincing' reasons. [The Ninth Circuit Court of Appeals has] also held that 'clear and convincing' reasons are required to reject the treating doctor's ultimate conclusions. Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record for so doing." Lester v. Chater, 81 F.3d 821, 830 (9ᵗʰ Cir. 1996) (citations omitted).

Dr. Driscoll's opinion regarding Ekwortzel is contradicted and thus the ALJ may not reject her opinion without providing "specific and legitimate reasons," which are supported by substantial evidence in the record. Having reviewed the entire

-14-

record, including the ALJ's written decision, and the parties'
arguments, the Court is unpersuaded, for the reasons discussed
below, by Ekwortzel's argument that the ALJ erred in considering
the foregoing evidence.

On September 8, 2005, Dr. Driscoll performed a psychiatric
evaluation of Ekwortzel. *Tr.* at 222-24. In this evaluation, Dr.
Driscoll states that "[t]his patient has a long-standing and
recurrent severe history of depression, which I believe is now
exacerbated by health problems and psychosocial situation." *Tr.*
at 223. In her evaluation she diagnosed "major depressive
disorder, recurrent, without psychotic features. Ruled out panic
disorder." Dr. Driscoll assessed Ekwortzel with a Global
Assessment of Functioning ("GAF") score of 25. *Tr.* at 223. She
indicates that "I tried my best to educate her about depression
and instill hope that it can be effectively treated." *Tr.* at
223.

Approximately one month later, on October 10, 2005, Dr.
Driscoll completed a Medical Questionnaire and Medical Source
Statement of Ability to Do Work-Related Activities (Mental). *Tr.*
at 244-47. In her medical source statement, Dr. Driscoll
indicates that Ekwortzel has marked[6] limitations in understanding
and remembering short, simple instructions; carrying out short,

---

[6] "Marked" is defined as "there is serious limitation in this
area. The ability to function is severely limited but not precluded."
*Tr.* at 246.

-15-

simple instructions; making judgments on simple work-related decisions; interacting appropriately with the public; interacting appropriately with co-workers; responding appropriately to work pressures in a usual work setting; and responding appropriately to changes in a routine work setting. She further noted that Ekwortzel had a moderate[7] limitation in interacting appropriately with supervisor(s).

In his decision, the ALJ found that:

> It is recognized that Dr. Driscoll reported marked limitations in functioning in her October 2005 report; however, these limitations are not supported by the record and are inconsistent with the mental health progress notes. Thus, her assessment cannot be afforded great weight when determining disability. . . . Further, Dr. Driscoll's conclusion that [Ekwortzel] is incapable of sustained work activity cannot be accepted, since a finding of inability to work is not a medical determination, but a legal call reserved to the Commissioner of Social Security.

*Tr.* at 23. The Court finds that the ALJ provided the following specific and legitimate reasons for not affording Dr. Driscoll's opinion great weight.

First, there is substantial evidence in the record to support the ALJ's decision not to afford Dr. Driscoll's assessment great weight because: (1) it was not supported by the medical records and (2) it was inconsistent with the mental

---

[7] "Moderate" is defined as "there is moderate limitation in this area but the individual is still able to function satisfactorily." *Tr.* at 2246.

health progress notes. *Tr.* at 23. For example, Dr. Gregg testified at the October 26th hearing,[8] that while Ekwortzel's depression was severe, her mental condition resulted in none to mild restrictions of daily activities, mild restriction of social functioning, and moderate restrictions on pace, persistence, and concentration. *Tr* at 299. He testified that he disagreed with Dr. Driscoll's GAF score of 25, because it was inconsistent with Ekwortzel's daily functioning, such as caring for her niece and next-door neighbor's child. *Tr.* at 300. The Court further notes that the record supports the ALJ's conclusion that Dr. Driscoll's opinion was inconsistent with Harrington's treatment notes. See e.g., *Tr.* at 220("Responding to new medication and had a good social experience"); 226 ("Was able to ventilate appropriate feelings and was appreciative of her appointment today"; 228 ("Appears less depressed") 229 ("She was much more animated and her flow of speech was more organized. ....she did not appear as depressed").

The ALJ also properly found that Dr. Driscoll's opinion regarding Ekwortzel's employability was not a medical opinion regarding the nature and severity of her impairments, but an opinion on an issue reserved to the ALJ. See 20 C.F.R. §

---

[8] The Court notes that portions of Dr. Gregg's testimony were inaudible. Neither party, however, objected to this problem. Nor did the parties object to the ALJ's specific findings regarding Dr. Gregg's testimony. *Tr.* at 21-22.

404.1527(e); 20 C.F.R. § 416.927(e); Nyman v. Heckler, 799 F.2d 528, 531 (9th Cir. 1986) (holding that "conclusory opinions by medical experts regarding the ultimate question of disability are not binding on the ALJ").

For all of the foregoing reasons, the Court finds that the ALJ made adequate findings with respect to the opinion of Dr. Driscoll.

## C. LISTING OF IMPAIRMENTS

Ekwortzel argues that she has met the listing requirements relative to her depression, found in 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.04. Plf.'s Brief at 6-10. Specifically, she asserts that she has met the listing requirements of § 12.04 (A)(1)(a)-ⓒ, (e)-(h), (B)(1)-(3). Id. at 10. She further argues that her impairments equal the listing requirements relative to chronic pulmonary insufficiency, found in listing § 3.02. Id. at 10-13.

As noted above, at step three of the sequential evaluation process, the ALJ is to determine whether a claimant's impairments meet or equal an impairment in Appendix 1 to Subpart P of Regulations No. 4. The Listing of Impairments "describes specific impairments of each of the major body systems 'which are considered severe enough to prevent a person from doing any gainful activity.'" Tackett v. Apfel, 180 F.3d 1094, 1099 (9th Cir. 1999) (quoting 20 C.F.R. § 404.1525). Each listing

-18-

"describes the characteristics of each impairment . . . [and] [t]he description includes the 'symptoms, signs and laboratory findings' that make up the characteristics of each listed impairment." Id.

"To *meet* a listed impairment, a claimant must establish that he or she meets each characteristic of a listed impairment relevant to his or her claim. To *equal* a listed impairment, a claimant must establish symptoms, signs and laboratory findings 'at least equal in severity and duration' to the characteristics of a relevant listed impairment, or, if a claimant's impairment is *not* listed, then to the listed impairment 'most like' the claimant's impairment." Id. (quoting 20 C.F.R. § 404.1526) (emphasis in original). Also, "[i]f a claimant suffers from multiple impairments and none of them individually meets or equals a listed impairment, the collective symptoms, signs and laboratory findings of all of the claimant's impairments will be evaluated to determine whether they meet or equal the characteristics of any relevant listed impairment." Id.

"An ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment. A boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not do so." Lewis v. Apfel, 236 F.3d 503, 512 (9th Cir. 2001) (citing Marcia v. Sullivan, 900 F.2d 172, 176 (9th Cir. 1990)).

-19-

Having carefully reviewed the record, the Court concludes that the ALJ's determinations at step three are based on substantial evidence in the record, and are free of legal error.

### 1. **Listing § 12.04**

Ekwortzel argues that the ALJ erred in failing to find that her impairments meet listing § 12.04 (A)(1)(a)-©, (e)-(h), (B)(1)-(3). *Plf.'s Brief* at 10. For Ekwortzel to show "that h[er] impairments match a listing, it must meet *all* of the specified medical criteria." See Sullivan v. Zebley, 493 U.S. 521, 530 (1990) (emphasis in original); see also Tackett, 180 F.3d at 1099 (claimant must establish that he or she "meets each characteristic of a listed impairment" relevant to her claim). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." Id.

Listing § 12.04, *Affective Disorders*, states:

Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation.

The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.

A. Medically documented persistence, either continuous or intermittent, of one of the following:

1. Depressive syndrome characterized by at least four of the following:

-20-

a. Anhedonia or pervasive loss of interest in almost all activities; or

b. Appetite disturbance with change in weight; or

c. Sleep disturbance; or

d. Psychomotor agitation or retardation; or

e. Decreased energy; or

f. Feelings of guilt or worthlessness; or

g. Difficulty concentrating or thinking; or

h. Thoughts of suicide; or

I. Hallucinations, delusions or paranoid thinking; or

2. Manic syndrome characterized by at least three of the following:

a. Hyperactivity; or

b. Pressure of speech; or

c. Flight of ideas; or

d. Inflated self-esteem; or

e. Decreased need for sleep; or

f. Easy distractibility; or

g. Involvement in activities that have a high probability of painful consequences which are not recognized; or

h. Hallucinations, delusions or paranoid thinking;

Or

3. Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes);

-21-

And

B. Resulting in at least two of the following:

1. Marked restriction of activities of daily living; or

2. Marked difficulties in maintaining social functioning; or

3. Marked difficulties in maintaining concentration, persistence, or pace; or

4. Repeated episodes of decompensation, each of extended duration;

Or

C. Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:

1. Repeated episodes of decompensation, each of extended duration; or

2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or

3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

See 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.04.

In his decision, the ALJ found at step three that Ekwortzel's impairments "do not meet or equal the severity of any impairment described in the Listing of Impairments." *Tr.* at 19. Focusing on listing § 12.04, the ALJ stated:

-22-

> [Ekwortzel] has been diagnosed with an affective
> disorder that is characterized by a disturbance of
> mood that does not precisely satisfy the
> diagnostic criteria of section 12.04 of the
> Listings, with mild difficulties in performing
> daily activities and functioning socially, and
> moderate limitations with concentration,
> persistence, and pace.  Since there is no evidence
> that [Ekwortzel] is markedly restricted in any two
> areas of functioning, her depressive [sic] is not
> found to be of listing level severity.

Tr. at 19.  The Court concludes that the ALJ's determination at

step three is based on substantial evidence in the record, and is

free of legal error.

A finding that Ekwortzel meets listing § 12.04, would

require the ALJ to rely on Dr. Driscoll's opinion regarding

Ekwortzel's limitations.  As discussed above, the ALJ properly

rejected her opinion.  Further, Dr. Gregg testified that while

Ekwortzel's depression was severe, her mental condition resulted

in none to mild restrictions of daily activities, mild

restriction of social functioning, and moderate restrictions on

pace, persistence, and concentration.  Tr. at 21-22; 299.

Listing § 12.04 states that: "The required level of severity

for these disorders is met when the requirements in both A and B

are satisfied[.]" (Emphasis added).  Because Dr. Gregg's

statements regarding Ekwortzel's limitations do not meet the

"marked" restriction requirements found in listing § 12.04B(1)-

(3), the ALJ could not determine that her impairments meet §

12.04.  See Zebley, 493 U.S. at 530.  Accordingly, the ALJ did

not err.

### 2.   Listing § 3.02

To be found disabled at step three, Ekwortzel had to
establish that her impairments were "medically equivalent to [a]
listed impairment [and] at least equal in severity and duration
to the criteria of any listed impairment."  20 C.F.R. § 404.1526.
She must "present medical findings equal in severity to *all* the
criteria for the one most similar listed impairment."  Zebley,
493 U.S. at 531.  Listing § 3.02A,[9] *Chronic pulmonary
insufficiency*, provides in pertinent part:

> A. Chronic obstructive pulmonary disease, due to
> any cause, with the $FEV_1$ equal to or less than the
> values specified in Table I corresponding to the
> person's height without shoes. (In cases of marked
> spinal deformity, see 3.00E.);

Table I

| Height without shoes (centimeters) | Height without shoes (inches) | $FEV_1$ equal to or less than (L, BTPS) |
|---|---|---|
| 154 or less ....... | 60 or less ............. | 1.05 |
| 155-160 ........... | 61-63 ................. | 1.15 |
| 161-165 ........... | 64-65 ................. | 1.25 |
| 166-170 ........... | 66-67 ................. | 1.35 |
| 171-175 ........... | 68-69 ................. | 1.45 |
| 176-180 ........... | 70-71 ................. | 1.55 |
| 181 or more ....... | 72 or more ............. | 1.65 |

See 20 C.F.R. pt. 404, subpt. P, app. 1, § 3.02A.

---

[9] Review of Ekwortzel's argument indicates that she is relying on
listing § 3.02A for support.

In his decision, the ALJ found at step three that Ekwortzel's impairments "do not meet or equal the severity of any impairment described in the Listing of Impairments." *Tr.* at 19. Focusing on listing § 3.02, the ALJ stated:

> Giving close attention to section 3.02 of the Listings, [Ekwortzel's] FEV1 readings have not been equal to or less than the values specified in Table I corresponding to her height without shoes. To meet the criteria for this listing, a FEV1 reading of 1.15 or less is required, but the pulmonary function testing reflects values in excess of this level.

*Tr.* at 19.[10]

Ekwortzel argues that the ALJ erred because he "merely chose to find the FEV1 level exceeded the Listing and chose to ignore the combination of impairments." She asserts that if the ALJ had combined the testing from October 2002 with the testing in June 2004, he would have found that Ekwortzel "clearly" equals the listing. *Plf.'s Brief* at 12. The Court does not reach the same conclusion.

First, regarding Ekwortzel's pulmonary function test conducted on October 11, 2001 (*Tr.* at 151), does not validly document her respiratory function for listing purposes. Thus, the ALJ properly did not rely on these results. See 20 C.F.R. pt. 404, subpt. P, app. 1, § 3.00E.[11] The second testing

_____

[10] "FEV" refers to "forced expiratory volume."

[11] 20 C.F.R. pt. 404, subpt. P, app. 1, § 3.00E provides in pertinent part that: "Spirometry should be repeated after

-25-

conducted on June 28, 2004, (*Tr.* at 179-81), indicated "prominent bronchodilator response." *Tr.* at 179. Further, this second test failed to meet the listing requirements. *Tr.* at 180 (showing a FEV1 level of 1.20).

Also, Dr. Schofield stated in his July 17, 2004, Residual Functional Capacity Assessment, (*Tr.* at 196-203), that Ekwortzel "has severe COPD but does not have severity to meet social security rules for disability." *Tr.* at 201. In his case review sheet, Dr. Schofield indicates an FEV1 level of 1.20 and states that the level is ".05 off from meeting listing 3.02." *Tr.* at 204. This evidence indicates that Ewortzel did not meet or equal the listing. Accordingly, the Court concludes that the ALJ's determination at step three regarding listing § 3.02 was not error.

### 3. Combination of Impairments

Ekwortzel also makes a cursory argument the ALJ chose to

---

administration of an aerosolized bronchodilator under supervision of the testing personnel if the pre-bronchodilator $FEV_1$ value is less than 70 percent of the predicted normal value. . . . If a bronchodilator is not administered, the reason should be clearly stated in the report. Pulmonary function studies performed to assess airflow obstruction without testing after bronchodilators cannot be used to assess levels of impairment in the range that prevents any gainful work activity, unless the use of bronchodilators is contraindicated. Post-bronchodilator testing should be performed 10 minutes after bronchodilator administration. The dose and name of the bronchodilator administered should be specified. The values in paragraphs A and B of 3.02 must only be used as criteria for the level of ventilatory impairment that exists during the individual's most stable state of health (i.e., any period in time except during or shortly after an exacerbation)."

ignore the combination of her impairments. *Plf.'s Brief* at 12. She asserts that the "symptoms arising from COPD, coupled with the symptoms from severe depression, mandates a conclusion that [she] is disabled." *Id.* at 12-13. Ekwortzel contends that the "combination of impairments, especially in view of how close she is under the COPD Listing, is required because a modest limitation with depression in view of her severe limitation on COPD mandates a finding that she meets a Listing or combination of Listings." *Plf.'s Reply Brief* at 11.

"If a claimant suffers from multiple impairments and none of them individually meets or equals a listed impairment, the collective symptoms, signs and laboratory findings of all of the claimant's impairments will be evaluated to determine whether they meet or equal the characteristics of any relevant listed impairment." Tackett, 180 F.3d at 1099. As stated above, there is substantial evidence in the record to support the ALJ's decision. Ekwortzel's combination of impairments do not mandate a finding that she meets the listings.

For all of the foregoing reasons, the Court finds that the ALJ's decision with respect to the listed impairments is supported by substantial evidence, and is free of legal error.

## D.  HYPOTHETICAL QUESTION

Ekwortzel argues the hypothetical relied upon by the ALJ "does not reflect [her] limitations as it specifically ignores

-27-

the opinion of the treating physicians, consulting psychologist and licensed clinic social worker." *Plf.'s Brief* at 18.  She contends that the hypothetical presented by the ALJ to the VE[12] failed to properly consider her exertional and non-exertional limitations.  Id. at 19.

The Court has already found, *supra*, that the ALJ did not err in his assessment of Ekwortzel's credibility regarding her symptoms and limitations.  Thus, the ALJ was not required to include in his hypothetical question to the VE, Ekwortzel's own version of her symptoms and limitations.   See Ostenbrock v. Apfel, 240 F.3d 1157, 1164-65 (9th Cir. 2001) ("An ALJ is free to accept or reject restrictions in a hypothetical question that are not supported by substantial evidence.").   Rather, he was free to consider the evidence as a whole in making his determination as to Ekwortzel's limitations.  In this instance, the ALJ relied upon the medical records and other credible evidence of record in determining her limitations for purposes of framing the hypothetical questions.  *Tr.* at 306-11.  The ALJ was permitted to do this, and thus he did not err.

Ekwortzel also argues that the ALJ erred in not including in his hypothetical questions to the VE Dr. Driscoll's opinions and

---

[12] The Court again notes that portions of the VE's testimony were inaudible.  Neither party, however, objected.  Nor did the parties object to the ALJ's specific findings regarding the VE's testimony. *Tr.* at 24.

her combination of impairments under listings § 3.02 and § 12.04. As discussed previously, however, the ALJ, was not required to incorporate unpersuasive evidence into his hypothetical questions. Ostenbrock, 240 F.3d at 1164-65

## V. CONCLUSION

Based on the foregoing, the Court finds that substantial evidence exists in the record to support the ALJ's decision. The Court further finds that the ALJ's decision is not based on legal error. Therefore, IT IS ORDERED that:

(1) The Commissioner's decision is **AFFIRMED**;

(2) Ekwortzel's Motion for Summary Judgment (*Court's Doc. No. 9*) is **DENIED** and the Commissioner's Motion for Summary Judgment (*Court's Doc. No. 15*) is **GRANTED**.

The Clerk shall enter Judgment accordingly.

DONE and DATED this _____ day of October, 2006.

Carolyn S. Ostby
United States Magistrate Judge